CLORINDA MAURO, *Admx. vs.* ACHILLE G. VERVENA, *Conservator.*

MARCH 23, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

FLYNN, C. J. This is a petition brought under public laws, 1933, chapter 2019, for leave to file with the respondent, as conservator of the Columbus Exchange Trust Company, a proof of an alleged creditor's claim, and to have the same allowed and ordered to be paid by the respondent. In the superior court the respondent appeared specially and filed a motion to dismiss the petition for want of jurisdiction. This motion, after hearing, was granted by a justice of that court sitting in equity. A decree was entered accordingly, and the case is before us on the petitioner's appeal from this decree.

The petition substantially alleges that the petitioner is the duly appointed and qualified administratrix of the estate of Carmela Loffredo, late of the city of Providence, deceased; that Carmela Loffredo, at the time of her death, was the owner of a savings account standing in her name in the Columbus Exchange Trust Company, in which the amount of the deposit was $402.96; that the respondent is now conservator of the Columbus Exchange Trust Company, a banking institution, by virtue of his appointment by the state bank commissioner, with the approval of the governor, acting under authority granted by public laws, 1933, chap. 2019; that the petitioner files her claim, as provided by general laws, 1923, chapter 390, sec. 29, and that the bankbook, representing said deposit, is lost or destroyed but that the account can be verified by the records of said banking institution; wherefore the petitioner prays that she may have her claim allowed by the court and ordered to be paid by said conservator and that a citation be issued by the court directing the respondent, as conservator of the bank, to appear and to abide by the orders of the court.

The respondent's motion to dismiss the petition, following his special appearance, is based on the contention that the equity court is without any jurisdiction of the subject

matter of the petition. He contends that chap. 2019 gives exclusive jurisdiction thereof to the State bank commissioner; and that chap. 390, mentioned in the petition, relates to the procedure for the liquidation of banking institutions and has no application to chap. 2019.

The petitioner contends that chap. 2019 does not divest the equity court of any jurisdiction of the subject matter in question after the appointment of a conservator. On the contrary, she contends that chap. 2019 authorizes the court to treat the conservator, once he is appointed, as if he were a receiver, duly appointed by the court in appropriate judicial proceedings, and that her rights as a creditor, with reference to filing and proving claim, and suing the respondent, are properly within the jurisdiction of the equity court, as fully as they would be in any other receivership.

The petition, though somewhat confusing in its references to statutes, can be reasonably interpreted as seeking, first, permission of the court to file against the conservator under chap. 2019 a creditor's proof of claim for a savings deposit; and secondly, to have the court allow that proof of claim and to order the conservator to pay it. If the motion to dismiss admits, for that purpose, the petitioner's alleged status as a creditor, and if either of the objects of the petition, as alleged, is properly the subject of equity jurisdiction, the justice erred in granting the respondent's motion to dismiss the petition.

Chapter 2019 was enacted and approved March 22, 1933, in the midst of the acute banking and economic crises, which were nationwide. If the general assembly intended thereby to give to the bank commissioner exclusive jurisdiction to receive and to judicially determine the claims and rights of creditors against any conservator of a bank, who was appointed by him under the provisions of this chapter, it did not do so in express terms. While it may be possible to reach such an interpretation by inference, the language of the statute is at least equally open to the

inference for which the petitioner contends. If anything, it seems to lend itself more to the construction that the general assembly did not intend thereby to *wholly* divest the equity court of its ordinary jurisdiction in such matters.

After authorizing the bank commissioner, with the written approval of the governor, and upon petition from the bank affected, to appoint a conservator of any bank or other institution subject to his supervision and oversight, for the benefit of its depositors and creditors and in order to provide opportunity for a reorganization of its affairs, chap. 2019 goes on to prescribe the powers of the bank commissioner with reference to such conservator, such as the creation and filling of any vacancy; fixing the conservator's bond and approving employment of certain persons. It also provides for conservators taking possession and managing the property and business of the institution and provides for notice to certain persons of his appointment and the effect thereof; and in the last paragraph of sec. 2, provides: "During the time that any such conservator remains in charge of the property and affairs of any such institution in accordance with the provisions of this act, the rights of creditors and all other parties in respect to bringing and prosecuting suits and proceedings against such institution and such conservator shall, except as provided in this act, be the same as if such conservator was a receiver of the property and affairs of such institution duly appointed and qualified in and by appropriate judicial proceedings instituted therefor."

Section 3 prescribes further duties and powers of a conservator, which include his power "to prosecute and defend suits and other proceedings at law and in equity to which such institution is a party", and also provides that "such conservator and his assistants shall be subject to the same penalties and liabilities to which they respectively would be liable if the conservator was the receiver of a corporation appointed in judicial proceedings in this State,

including penalties and liabilities now established and which hereafter may be established by law."

The respondent contends that the above-quoted sections, and any similar references, merely describe the procedure to be followed before the bank commissioner. If this be so, the general assembly nowhere seems to have expressly authorized the bank commissioner to hold hearings and to determine claims, according to procedure like that followed in equity, but rather places upon the conservator the duty of allowing and disallowing claims, and in prosecuting or defending suits brought by or against the bank. We think that the petitioner's interpretation of this language seems the more reasonable under present circumstances, namely, that once the conservator is appointed by the bank commissioner under chap. 2019, the procedure set forth therein is not merely descriptive of procedure before the bank commissioner but is intended to protect the rights of creditors in proper proceedings which may be brought in the equity court. In any event, if it were intended by the general assembly to divest the court of this jurisdiction and to give it to the bank commissioner, because of the acute banking crisis that existed in 1933, we are not inclined, at the present time, to extend its language by unnecessary inference beyond the reasonable requirements of the emergency conditions.

Under all the existing circumstances, the denial of the respondent's motion to dismiss takes no substantial right away from him or the bank; nor can it do harm to either party or the public. It does give to the petitioner an opportunity, not otherwise readily open, to present her claim and to have it adjudicated upon its merits, as if it were a part of a receivership proceeding. Particularly is this true in the instant case, because the transcript discloses that the bank commissioner has declined to hear the petition and has disclaimed any authority or jurisdiction to pass upon the rights of the petitioner and her claim. No case has been cited to us where the bank commissioner, under

this chapter, has asserted the exclusive jurisdiction for which the respondent contends.

The first object sought by the petitioner, namely, permission to file her claim as a creditor against the respondent, in our opinion is not inconsistent with the express language or spirit of chap. 2019 and appears to provide a reasonable opportunity for both parties to have their rights heard and protected by the equity court, after due notice to the respondent and a hearing on the merits in accordance with existing law.

The second object of the petition, if considered strictly, may be erroneously conceived and misstated. General laws, 1923, chap. 390, sec. 29, does not seem to have any material application to the instant case, except perhaps as an argument, by analogy, relating to the method by which the petitioner should proceed to make proof of her claim after permission to file has been obtained. We think, however, that this defect goes to the matter of the proper proof of the claim, rather than to the jurisdiction of the equity court to give permission to have it filed and heard. In that respect, the petitioner may be faced, on the proof of her status as a creditor, with the necessity of complying with other statutes, such as that relating to lost bankbooks, but such questions will arise upon the evidence, rather than upon a motion to dismiss for want of jurisdiction. Likewise, the petitioner may later be forced to seek permission to amend her petition because of this erroneous reference to chap. 390. However, in our view of the instant case, upon the motion to dismiss, we think the mistaken reference to chap. 390 may be considered as surplusage and not fatal.

The trial justice, in his ruling, said: "It does seem to the court that the superior court would have jurisdiction if the action were brought as an original bill in equity, bringing in all the parties concerned. But it strikes the court this petition is an auxiliary petition to something which is not yet in court."

In our opinion, by the terms of chap. 2019, and to the extent thereof, the appointment and qualifications of the respondent, as a conservator, and his acting thereunder are to be considered as the equivalent of an appointment of a receiver upon an original bill in equity, for the purpose of protecting the rights of a creditor, who seeks an opportunity to file a claim for a bank deposit. So viewed, the court had something before it upon which this petition could be based.

The petitioner ought to have an opportunity to file her claim, and to prove it, if she can, in accordance with existing law, and the procedure set forth in chap. 2019; so that if found properly entitled to the deposit, the conservator may be ordered to pay such deposit in the same manner and to the same extent as he may pay other similar depositors. For the reasons stated, the petitioner's appeal is sustained and the decree appealed from is reversed.

On March 31, 1937, the parties may present to us for approval a form of decree to be entered in the superior court.

*Emilio D. Iannuccillo,* for petitioner.

*Greenough, Lyman & Cross, Owen P. Reid,* for respondent.